UNITED STATES of America

v.

Christopher Lynn JOHNSON.

Cr. No. 95–123–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Oct. 17, 1995.

Ronald Wayne Wise, Montgomery, AL, for Christopher Lynn Johnson.

Louis V. Franklin, Sr., David L. Allred, U.S. Attorney's Office, Montgomery, AL, for U.S.

## *ORDER*

MYRON H. THOMPSON, District Judge.

Defendant Christopher Lynn Johnson has been indicted in a two-count indictment charging him with (1) burning down the Randolph County High School, in violation of 18 U.S.C.A. § 844(f) (West Supp.1995); and (2) possessing an illegal explosive device, in violation of 26 U.S.C.A. § 5861(d) (West 1989). The government filed a motion in limine seeking to exclude evidence regarding five other suspects—Hulond Humphries, Charles Jarrell, Jack Pointer, Ricky Johnston and Brian Holloway—in the crimes for which Johnson has been indicted. The United States Magistrate Judge recommends that the motion be denied as to suspect Humphries and granted as to the remaining suspects. The government has objected to the extent that the Magistrate Judge concludes that the evidence regarding Humphries should be admitted, and Johnson has objected to the extent that the Magistrate Judge concludes that the evidence regarding Jarrell, Pointer, and Johnston should not be admitted. Neither the government nor Johnson has objected to the Magistrate

Judge's conclusion that the evidence regarding Holloway should not be admitted.

Johnson's contention that the court should admit evidence that other persons set fire to the high school has two possible bases. First, the court must address whether the evidence is admissible under the Federal Rules of Evidence. Second, even if the evidence is inadmissible under these rules, the court must still consider whether Johnson has a constitutional right to have the evidence admitted; Johnson's constitutional right would supersede any application of the Federal Rules of Evidence. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ("where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice"); *Card v. Dugger*, 911 F.2d 1494, 1514 (11th Cir.1990) ("due process requirements supersede application of state hearsay rules").

For the reasons that follow, the court agrees with the Magistrate Judge as to suspects Humphries, Jarrell, Pointer, and Johnston. Because neither party has objected to the recommendation as to suspect Holloway, the court assumes that both parties agree that evidence regarding him is inadmissible and the court does not visit that part of the Magistrate Judge's recommendation.

## I. HULOND HUMPHRIES

### A. Background

There is substantial evidence from which a jury could reasonably conclude that Humphries burned down the Randolph County High School. First, there is evidence suggesting that he would have a motive. The Randolph County High School burned down in the early morning of August 6, 1994. Throughout the year before the fire, Humphries had been at the center of considerable controversy and racial tension in Randolph County. This was caused in part when he allegedly said that he would rather cancel the Randolph County High School prom than allow interracial couples to attend.[1] Because of the controversy surrounding him, it was possible that he would be removed as principal of the school. This evidence suggests that he might have burned down the school out of anger over interracial dating at the school and the possible loss of his job.

Second, there is evidence from which a jury could conclude that Humphries not only had the opportunity but also planned to set the fire. Sometime during the week before the fire, Humphries bought five gallons of gasoline in a container.[2] Also during that week, he removed several personal items from his office at the school.[3] The night of the fire, Humphries was alone at the school for approximately 45 minutes before finally leaving at around 9:40 p.m.,[4] which was approximately three hours before the fire.[5] He went to visit friends on his way home because he was feeling down, and they discussed the situation at the school.[6]

Third and finally, Humphries twice stated to FBI agents that he burned down the high school and each time quickly recanted. First, on August 7, 1994, FBI Special Agents Claiborne J. Poche and William Joseph Long interviewed Humphries regarding the fire at the school. At the end of the agents' notes of the interview, the following entry appears:

> "During the interview, HUMPHRIES made reference to the fire at the high school and commented to the effect that he started the fire. HUMPHRIES quickly

---

1. Polygraph examination worksheet of Hulond Humphries at A2, filed as attachment A to United States' motion in limine, filed on August 4, 1995 (hereinafter Humphries polygraph).

2. Notes of August 11, 1994, interview with Hulond Humphries at A18, attachment A to United States' motion in limine, filed August 4, 1995 (hereinafter August 11, 1994, interview).

3. Notes of August 9, 1994, interview with Hulond Humphries at A28, attachment A to United

States' motion in limine, filed August 4, 1995 (hereinafter August 9, 1994, interview).

4. August 7, 1994, statement of Hulond Humphries at A7, attachment A to United States' motion in limine, filed August 4, 1995.

5. Humphries polygraph at A3.

6. *August 9, 1994, interview, at A26.*

corrected the statement, giving the implication that his comment was a mistake.

"At this point in the interview, HUMPHRIES became emotionally upset while discussing the fire at Randolph County High School. The interviewing agents terminated the interview, based on HUMPHRIES' request and agreed to meet with him the following day for additional questioning." [7]

The second time Humphries said he started the fire was during an interview with the same two FBI agents on August 11, 1994.[8] The following appears in the notes from that interview:

"During the interview, HUMPHRIES made reference to the fire at Randolph County High School and made a comment to the effect that he started the fire. HUMPHRIES quickly retracted the statement, leaving the impression that his comment was a mistake." [9]

### B. Federal Rules of Evidence

 As stated, the court must first consider whether the evidence regarding Humphries is admissible under the Federal Rules of Evidence. Federal Rule of Evidence 402 (West 1984) provides that evidence must be relevant to be admissible. "Relevant evidence," according to Federal Rule of Evidence 401 (West 1984), "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevance alone does not require that the evidence be admitted. Federal Rule of Evidence 403 (West 1984) provides that even relevant evidence must be excluded if it will confuse the issues, mislead the jury, waste time, or cause delay, or if its

"probative value is substantially outweighed by the danger of unfair prejudice." *Id.* It is proper to exclude evidence if it will send "the trial down a sidetrack," *United States v. Cole,* 670 F.2d 35, 37 (5th Cir. Unit B 1982),[10] or if the evidence appears to have been "dragged in by the heels for the sake of its prejudicial effect." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).[11] Evidence that a person other than the defendant committed the crime would certainly be admissible if it was exculpatory and if it complied with the requirements of Rules 401 and 403. *See Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049 (exculpatory evidence that third party committed crime was relevant to defense). In other words, evidence of third-party guilt cannot be tenuous or merely speculative; it must be substantial and probative.

Evidence that Humphries started the fire meets the requirements of Rules 401, 402, and 403 for admissibility. The evidence of links between Humphries and the crime is clear and direct: he was at the center of considerable controversy regarding allegedly racist comments he made about the school prom; he could have been upset over interracial dating at the school; he could have feared that he would lose his job because of the controversy his comments caused; he was the last person in the school only a few hours before the fire; and he had purchased gasoline the week before the fire.

 The conclusion that all the evidence implicating Humphries is relevant and admissible under Rules 401, 402, and 403 does not end the court's inquiry, however. Part of this evidence—the two statements Humphries made to the FBI agents—meets the definition of hearsay as defined in Federal

---

**7.** Notes of August 7, 1994, interview with Hulond Humphries at A22, attachment A to United States' motion in limine, filed August 4, 1995 (hereinafter August 7, 1994 interview).

**8.** Agent Dawn Abrams of the Bureau of Alcohol, Tobacco and Firearms was also present for the interview.

**9.** August 11, 1994, interview, at A19.

**10.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.

**11.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Rule of Evidence 801(c) (West 1984): "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." These statement are admissible only if they fit into some exception to this definition. Fed.R.Evid. 802 (West 1984).

The evidentiary rules providing for exceptions to the prohibition on the admission of hearsay distinguish between those circumstances where a declarant is available as a witness and those where he is not. *See* Fed.R.Evid. 803 (West 1984 & Supp.1995) (hearsay exceptions "even though the declarant is available as a witness") and 804 (West 1984 & Supp.1995) (hearsay exception "if the declarant is unavailable as a witness"). Because it is not yet clear whether Humphries will testify, it is necessary to consider how to proceed both as if he will be available as a witness and as if he will not be available. There are at least three possible scenarios: (1) he may testify and admit making the statements; (2) he may testify and deny making them; and (3) he may decline to testify. Each is discussed separately below.

### 1. If Humphries is available to testify and admits making the statements

■ The exceptions to the hearsay rule for an available declarant are found in Federal Rule of Evidence 803 (West 1984 & Supp. 1995), and the only exception that may apply to Humphries's statements is subsection (24), the residual hearsay exception.[12] Rule 803(24) (West Supp.1995) allows the admission of hearsay statements not falling into any other exception if they meet five requirements: (1) the statement must be trustworthy; (2) it must be offered as evidence of a material fact; (3) it must be more probative

on that point than any other evidence reasonably available; (4) the general purposes of the rules and the interests of justice must be served by its admission; and (5) the other side must be given notice that the statement will be offered.

■ A finding of trustworthiness must be based on a consideration of the totality of the circumstances. *Idaho v. Wright*, 497 U.S. 805, 819–820, 110 S.Ct. 3139, 3148–3149, 111 L.Ed.2d 638 (1990). However, under Rule 803(24), "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright*, 497 U.S. at 819, 110 S.Ct. at 3148. The standard is whether "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." *Id.* at 820, 110 S.Ct. at 3149. Independent corroborating evidence may not be considered in judging the trustworthiness of a hearsay statement sought to be admitted pursuant to a residual hearsay exception. *Id.* at 823–824, 110 S.Ct. at 3150–3151; *see also United States v. Accetturo*, 966 F.2d 631, 635 (11th Cir.1992), *cert. denied*, 506 U.S. 1082, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993).

■ In this case, these requirements for trustworthiness have been met. Humphries made the statements to two FBI agents who could testify that they were actually made; the FBI interview notes for both interviews indicate that Humphries "voluntarily provided the following information";[13] prior to the first interview, Humphries was "advised of the official identities of the interviewing agents, as well as the nature of the inter-

---

**12.** Rule 803(24) provides as follows:
"Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, [is admissible] if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement

into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."

**13.** August 7, 1994, interview, at A20; August 11, 1994, interview, at A18.

view";[14] the statements were made within days of the events which they describe; and, finally, the statements are self-incriminating. Taken together, these facts support the conclusion that Humphries's statements meet the requirement for trustworthiness, the first requirement for admissibility. *See Accetturo*, 966 F.2d at 635 (trustworthiness requirement under Rule 803(24) met because witness made statement in fear for his life and voluntarily to law enforcement officials shortly after the events in the statement).

Rule 803(24)'s four other requirements are met as well. *Materiality:* Evidence that Humphries set the fire would exculpate Johnson, and exculpatory evidence is certainly material. *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049 (exculpatory evidence that third-party committed crime was "critical"); *Washington v. Texas*, 388 U.S. 14, 16, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967) (evidence that accomplice actually committed crime would have been "relevant ... [,] material, ... [and] vital"). *Probativeness:* The evidence is more probative on the point for which it is offered than other evidence reasonably available, because Humphries is the best source of information on the issue of whether he set the fire. *General purposes:* The general purposes of the Federal Rules of Evidence—that "the truth may be ascertained and proceedings justly determined," Fed.R.Evid. 102 (West 1984)—and the interests of justice would be served by the admission of the statements.[15] *Notice:* This requirement allows the adverse party "a fair opportunity to prepare to the meet" the out-of-court statement. Fed.R.Evid. 803(24) (West Supp.1995). Under the requirement, the proponent must make known his "intention to offer the statement and the particulars of it, including the name and address of the declarant."[16] *Id.* Here, the government has known for months the particulars of Humphries's statements and that Johnson seeks to use them at trial.[17]

All factors for admissibility under Rule 803(24) have therefore been met.

### 2. If Humphries is available to testify and denies making the statements

■ If Humphries testifies and denies making the statements, then Johnson must meet not only the requirements of Rule 803(24), discussed above, but also Federal Rule of Evidence 613(b) (West Supp.1995). Rule 613(b) allows extrinsic evidence of a prior inconsistent statement only if the witness is given an opportunity to explain or deny it and the opposing party is given the opportunity to ask the witness about it.[18] This rule merely prescribes the procedure for questioning, and it appears that all of its requirements can be easily met.

### 3. If Humphries is unavailable

■ If Humphries is unavailable to testify, then his statements to the FBI agents could be admissible under Federal Rule of Evidence 804(b)(3) (West Supp.1995).[19] Ac-

---

**14.** August 7, 1994, interview, at A20.

**15.** Rule 102 provides the "general purposes" of the rules: "fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law to the end that the truth may be ascertained and proceedings justly determined."

**16.** The notice requirement can be met "without specific reference to the rule." *United States v. One 1968 Piper Navajo Twin Engine Aircraft*, 594 F.2d 1040, 1041 (5th Cir.1979). Thus, even though a defendant did not cite "the correct number of a rule," the statement is still admissible if the government "was warned to prepare to meet the matter in question." *Id.*

**17.** The Magistrate Judge recommended that Humphries's statements should be admitted to impeach only. United States Magistrate Judge's recommendation at 11, entered on September

19, 1995. However, he did not explain how the statements, with this restriction, would advance Johnson's exculpatory defense and thus would be relevant.

**18.** Rule 613(b) reads as follows:

"Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2)."

**19.** Rule 804(b)(3) reads as follows:

"A statement which was at the time of its making so far contrary to the declarant's pecu-

cording to this rule, a statement may be admitted if (1) the declarant is unavailable as a witness; (2) the statement is against the declarant's penal interest; and (3) there are corroborating circumstances which clearly indicate the trustworthiness of the statement. These requirements could be met here.

■ First, this rule would apply only if Humphries is unavailable; for example, if he asserts his privilege against self incrimination and declines to testify. *United States v. Hendrieth*, 922 F.2d 748, 750 (11th Cir.1991) (asserting fifth amendment privilege renders witness unavailable to testify). Second, there can be no question that an admission to agents of the FBI that he committed arson is against his penal interest. Therefore, only the third factor requires discussion.

■ Trustworthiness is evaluated by considering "the probable veracity of the in-court witness, and the reliability of the out-of-court declarant," *United States v. Alvarez*, 584 F.2d 694, 701 (5th Cir.1978) (citing *United States v. Bagley*, 537 F.2d 162, 167 (5th Cir.1976), *cert. denied* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977)), which may include whether there are "circumstances corroborating" the statements. *Alvarez*, 584 F.2d at 702. In this case, there is no reason to doubt the veracity of the two FBI agents who heard Humphries's statements. Further, there are circumstances which corroborate the assertion that Humphries started the fire: He had a motive to burn the school; he was the last one in the school before the fire; he bought gasoline the week before the fire; he removed personal items from the burned school the week before the fire; and he told friends the night of the fire that he was feeling down.

### C. Constitutional Right

Because the evidence inculpating Humphries is admissible under the Federal Rules of Evidence, the court need not reach Johnson's contention that he is entitled to admis-

sion of the evidence under the United States Constitution. Nevertheless, in order that the record may be complete, the court will address this contention as well.

■ Although Johnson does not make clear which provision in the Constitution he is relying upon, the court assumes that he is relying on the fifth and sixth amendments. The fifth amendment provides in part that "No person shall ... be deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V (West 1987), and the sixth amendment provides in part that "In all criminal proceedings, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI (West 1987). The court is convinced that, between these two amendments, a defendant has a right to present to the jury substantial and reliable exculpatory evidence that another person committed the crime. *See Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049 (state trial court denied defendant due process under the fourteenth amendment when it refused to allow him to present to the jury substantial and reliable evidence that another person had committed the crime); *Washington*, 388 U.S. at 23, 87 S.Ct. at 1925 (the sixth amendment's compulsory provision, as enforced on the states through the fourteenth amendment, gives a defendant the "right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense"); *United States v. North*, 910 F.2d 843, 889 (D.C.Cir.1990) (sixth amendment includes right to present a defense), *vacated in part on other grounds*, 920 F.2d 940 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

■ In determining whether a defendant is entitled to admission of third-party exculpatory evidence, the trial court must engage in a balancing of interests. *See Cikora v.*

niary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to

be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

*Dugger,* 840 F.2d 893, 898 (11th Cir.1988) (fourteenth amendment's due process clause requires "a balancing of interests" in determining whether third-party exculpatory evidence is admissible). The court must weigh the defendant's "strong interest in presenting exculpatory evidence" against the state's interest "in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party." *Id.* To satisfy this balancing test, there must be "some showing of a nexus between the other party and the particular crime with which a defendant is charged." *Id.* Of course, this nexus must be substantial—that is, probative—and not tenuous or merely speculative.

■ Here, Humphries is linked to the crime in several ways. He had a motive to burn the school; he was the last one in the school before the fire; he bought gasoline the week before the fire; he removed personal items from the burned school the week before the fire; he told friends the night of the fire that he was feeling down; and, finally, he admitted twice to committing the crime. The nexus between Humphries and the crime is substantial and probative.

## II. JARRELL AND POINTER

■ The only evidence linking Jarrell and Pointer to the crime is that an acquaintance of theirs told the government that they were extremely racist and that they had bragged about setting the fire.[20] The government has been unable to find them and

has never spoken to them, and there is no other evidence connecting them to the crime. The evidence regarding Jarrell and Pointer is nothing more than unsubstantiated speculation and thus is inadmissible. Because the evidence is so tenuous, it does not meet the requirements for admissibility under Rules 401, 402, and 403, nor is its admission required by the fifth and sixth amendments.[21] *See, e.g., Cikora,* 840 F.2d at 898 (third-party exculpatory evidence too tenuous to be admissible).

## III. JOHNSTON

The evidence against Johnston can be divided into three parts: (1) he was present at the fire and helped to fight it;[22] (2) he failed a polygraph;[23] and (3) a friend of his told the FBI that Johnston told him that he set the fire, and said that Johnston made other incriminating statements.[24]

■ The first piece of evidence against Johnston—that he was present at the fire and helped fight it—does not inculpate Johnston and thus does not exculpate Johnson. It is thus irrelevant under Rules 401 and 402, and its admission is not required by the fifth and sixth amendments.

■ The second piece of the evidence against Johnston—that he failed a polygraph test—is admissible in only three circumstances: (1) by stipulation of the parties, *United States v. Piccinonna,* 885 F.2d 1529, 1536 (11th Cir.1989); (2) "to ... corroborate the testimony of a witness," *id.;* or (3) "to impeach ... the testimony of a witness." *Id.*

20. Notes of August 11, 1994, interview with Danny Ray McNeal, at D3, filed as attachment D to United States' motion in limine on August 4, 1995.

21. Moreover, evidence from an acquaintance of Jarrell and Pointer that they bragged about setting the fire would be hearsay. Johnson has not shown how this evidence would be admissible under Rule 803(24) or some other exception.

22. Polygraph examination worksheet of Ricky Johnston at B4–B5, attached as exhibit B to United States' motion in limine filed August 4, 1995 (hereinafter Johnston polygraph).

23. Johnston took a polygraph examination on August 10, 1994, administered by FBI Special

Agent Terry M. Scott. Scott concluded that Johnston was deceptive when he answered questions regarding the fire. The following appears in the examiner's report:

> "It is the opinion of the examiner that the physiological responses to the relevant questions on this examination are indicative of deception.
> "The relevant questions asked were:
> "A: Did you set that high school on fire?
> "ANSWER: No.
> "B: Did you set that RCHS on fire:
> "ANSWER: No."

Johnston polygraph at B4–B5.

24. Interview with Mark Anthony Duffey on September 27, 1994, at B44, attachment B to United States' motion in limine, filed on August 4, 1995.

There has been no stipulation in this case, and Johnson is not seeking the admission of the polygraph test for corroboration purposes. Therefore, the only possible ground for admission of such evidence would be to impeach Johnston if he testifies at trial, and it would not come in as substantive evidence. However, the impeachment of Johnston would, by itself, be a meaningless exercise and thus would be irrelevant because it would not advance Johnson's exculpatory defense.

■ Only the third piece of evidence regarding Johnston—that he told a friend that he set the fire—could conceivably provide substantive evidence exculpating Johnson. However, this evidence, standing alone, is extremely tenuous. There is nothing to suggest that Johnston had a motive to commit the crime and no physical evidence linking him to the crime, and the evidence suggests that on the night of the fire, he was at home.[25] As with the evidence relating to Pointer and Jarrell, the evidence regarding Johnston is not admissible under Rules 401, 402; nor is its admission required by the fifth and sixth amendments.[26]

Accordingly, for the above reasons, it is ORDERED as follows:

(1) That the objections filed by the government on September 22, 1995, and defendant Christopher Lynn Johnson, filed September 22, 1995, are overruled;

(2) That the recommendation entered by the United States Magistrate Judge on September 19, 1995, is adopted; and

(3) That the motion in limine filed by the government on August 4, 1995, is denied as to suspect Hulond Humphries and is granted in all other respects.

DONE.

---

25. Interview with Betty Jean Johnston on August 31, 1994, at B22, attached as exhibit B to United States' motion in limine filed on August 4, 1995.

26. Moreover, evidence from Johnston's friend would be hearsay, and Johnson has not shown how this evidence would be admissible under Rule 803(24) or some other exception.