BURKE, Judge.
Devonte Cortes Acosta was convicted of first-degree burglary, a violation of § 13A-7-5, Ala.Code 1975, and was sentenced to 156 months in prison.
On appeal, Acosta argues that the trial court improperly prevented him from putting on a defense by not allowing him to present a statement one of the alleged perpetrators made to a police officer. He does not challenge the sufficiency of the evidence, so a short rendition of the evidence is all that is necessary. James W. Benford, Sr., lived with his three sons and wife. On the day of the burglary, Benford and two of his sons were in the house, and his wife was in their truck, which was parked in front of the house. Benford heard men yelling, “Hey, where is your boy?” (R. 72.) Three armed black men then entered the house. The men continued to ask about the third son, who was not at home, and they stated that they wanted their “ ‘property’ ” back from him. (R. 73, 74.) One of the men demanded that Benford get down, and he pushed and kicked Benford. One of the men had a shotgun and the other two men had pistols. They asked one of the sons if there was anything worth taking in the house, and they rummaged through the house. The men were in the house for approximately 15 to 30 minutes. Benford and his sons who were present testified at trial that they recognized Acosta, who had been to their house before and who had played video games there, as well as one of the other men (R.J.). The youngest son recognized all three men. They identified Acosta at trial as one of the men who had been at the house and who had been armed with a pistol.
On cross-examination of Detective Josh Fisher, the officer who took the victims’ statements, testified that Benford’s trial testimony differed from the information he had previously given in his statement. Detective Fisher testified that Benford originally stated that he was unable to identify any of the suspects or to give any description of the men because the shotgun was in his face and he was afraid.
Acosta gave a statement to the police denying involvement in the burglary. At *647 trial, Acosta denied having been involved in the offense and presented alibi-witness testimony. R.J.’s mother testified that Acosta was not with her son and the other men but that Acosta and his younger brother had arrived at her house after R.J. and the others had left. Acosta, she stated, left her house just before her son and the others returned. Acosta’s brother testified that he had been with Acosta during that time and confirmed RJ.’s mother’s testimony. He further testified that they had not broken into Benford’s house.
Acosta then called Detective Fisher, who previously testified for the State that he had taken a statement from R.J. during the investigation. Defense counsel asked Detective Fisher if R. J. had stated whether Acosta was involved in the burglary. The State objected on the grounds that the question called for hearsay, and defense counsel responded that the declarant, R.J., was unavailable because he had the right not to incriminate himself by taking the stand. The trial court agreed that the witness was unavailable, see Rule 804(a)(1), Ala. R. Evid. (providing that a witness is unavailable when he “is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant’s statement”).[1] However, the trial court noted that R.J.’s statement was not made under oath; therefore, to be admissible under Rule 804, Ala. R. Evid., it must be a statement against interest.
The State argued that the statement was not against R.J.’s proprietary or pecuniary interest. The trial court then stated that it would read the statement to determine what R.J. had said, because all that was proffered was that R.J. had stated that Acosta was not involved in the offense.[2] The record indicates that there was a pause in the proceedings at that time, but it is unclear whether the trial court read the statement. (R. 193-94.) After further argument, the trial court sustained the State’s objection.
Acosta argues on appeal that he was prevented from presenting a proper defense at trial because Detective Fisher’s testimony concerning the contents of R.J.’s statement was excluded. Acosta’s argument is based on the principles explained in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In its brief on appeal, the State asserts that Acosta’s argument was not preserved for appellate review. The State contends that Acosta’s arguments at trial centered solely on his contention that the witness’s statement fell within an exception to the hearsay rule.
However, when Acosta first attempted to elicit the hearsay testimony from Detective Fisher, the following exchange occurred:
“[Prosecutor]: Objection on the same ground. Objection, Judge.
“[Defense counsel]: I’m asking his impression as a law enforcement—
“[Prosecutor]: That is a backdoor effort at the same thing. Judge. I object. It calls for hearsay.
“[Defense counsel]: Your Honor, in response to that I would say again his liberty is at stake. He has every right to maintain a defense.”
*648 (R. 189)(emphasis added). Acosta then proceeded to respond to the State’s hearsay objection by arguing that the testimony fell within an exception under Rule 804, Ala. R. Evid. However, by arguing that Acosta’s liberty was at stake and that he had a right to maintain a defense, we believe that Acosta adequately preserved the argument he now raises on appeal, i.e., that the strict application of the hearsay rule, as in Chambers, “rendered his trial fundamentally unfair and deprived him of due process of law.” Chambers, 410 U.S. at 289-90.
We also note that in Chambers the United States Supreme Court discussed whether Chambers’s argument had been properly preserved. In a footnote, the Court stated:
“On the record in this case, despite the State Supreme Court’s failure to address the constitutional issue, it is clear that Chambers’ asserted denial of due process is properly before us. He objected during trial to each of the court’s rulings. As to the confrontation claim, petitioner asserted, both before and during trial, his right to treat McDonald as an adverse witness. His motion for new trial, filed after the jury’s verdict, listed as error the trial court’s refusal to permit cross-examination of McDonald and the exclusion of evidence corroborative of McDonald’s guilt. The motion concluded that the trial ‘was not in accord with fundamental fairness guaranteed by the Fourteenth Amendment of the Constitution.’ Chambers reasserted those claims on appeal to the State Supreme Court.”
Chambers, 410 U.S. at 290 n. 3.
Like the defendant in Chambers, Acosta objected to the trial court’s rulings and filed a motion for a new trial raising the issue he now argues on appeal. (C. 49-51.) Accordingly, we believe that Acosta’s argument is properly before this Court for review.
Detective Fisher’s testimony as to the contents of R.J.’s statement was undoubtedly hearsay. See Rule 801, Ala. R. Evid. Moreover, the testimony does not fall within any exception to the hearsay rule under the Alabama Rules of Evidence. Notably, Rule 804, Ala. R. Evid., which provides for exceptions to the hearsay rule when a witness is unavailable, does not provide an exception for an unavailable witness’s statement against his penal interest. Rather, Rule 804 provides an exception only for statements against an unavailable witness’s “pecuniary or proprietary” interest. Rule 804(b)(3), Ala. R. Evid.
In contrast, the Federal Rules of Evidence provide that an unavailable witness’s hearsay testimony is admissible if that testimony has “so great a tendency to ... expose the declarant to civil or criminal liability; and ... is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.” Rule 804(b)(3), Fed,R.Evid.
Nevertheless, the United States Supreme Court has held that “where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).[3] In the present case, as in Cham- *649 hers, the strict application of the rules of evidence deprived Acosta of the opportunity to present evidence indicating that he was not involved in the crime. The Alabama Supreme Court has adopted the rationale from Chambers and in Ex parte Griffin, 790 So.2d 351, 353-55 (Ala.2000), explained the circumstances under which that reasoning should apply:
“The United States Supreme Court has held that a defendant has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, this right is not absolute; instead, the trial court will have to consider the admissibility of such evidence in conjunction with other legitimate interests involved in the trial process. Chambers, 410 U.S. at 295, 93 S.Ct. 1038; see also Guam v. Ignacio, 10 F.3d 608 (9th Cir.1993). As a result, the trial court is presented with a balancing test in order to determine whether the evidence of a third party’s culpability is properly admissible:
“ ‘The court must weigh the defendant’s “strong interest in presenting exculpatory evidence” against the state’s interest “in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party.”’
“United States v. Johnson, 904 F.Supp. 1303, 1311 (M.D.Ala.1995) (citations omitted). In weighing those interests, the federal courts have required the defendant to show that the evidence he is offering is probative and not merely speculation that would confuse the jury:
“ ‘To satisfy this balancing test, there must be “some showing of a nexus between the other party and the particular crime with which a defendant is charged.” Of course, this nexus must be substantial — that is, probative — and not tenuous or merely speculative.’
“Id. (citations omitted).
“Like the federal courts, Alabama courts have long recognized the right of a defendant to prove his innocence by presenting evidence that another person actually committed the crime. See Ex parte Walker, 623 So.2d 281 (Ala.1992); Thomas v. State, 539 So.2d 375 (Ala.Crim.App.1988); Green v. State, 258 Ala. 471, 64 So.2d 84 (1953); Underwood v. State, 239 Ala. 29, 193 So. 155 (1939); Orr v. State, 225 Ala. 642, 144 So. 867 (1932); Houston v. State, 208 Ala, 660, 95 So. 145 (1923); Tennison v. State, 183 Ala. 1, 62 So. 780 (1913); McGehee v. State, 171 Ala. 19, 55 So. 159 (1911); McDonald v. State, 165 Ala. 85, 51 So. 629 (1910), In addition, Alabama courts have also recognized the danger in confusing the jury with mere speculation concerning the guilt of a third party:
“‘It generally is agreed that the defense, in disproving the accused’s own guilt, may prove that another person committed the crime for which the accused is being prosecuted.... The problem which arises in the application of this general rule, however, is the degree of strength that must be possessed by the exculpatory evidence to render it admissible. The task of determining the weight that must be possessed by such evidence of another’s guilt is a difficult one.’
*650 “Charles W. Gamble, McElroy’s Alabama Evidence § 48.01(1) (5th ed.1996). To remove this difficulty, this Court has set out a test intended to ensure that any evidence offered for this purpose is admissible only when it is probative and not merely speculative. Three elements must exist before this evidence can be ruled admissible: (1) the evidence ‘must relate to the “res gestae” of the crime’; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence “would have to be admissible if the third party was on trial.’ See Ex parte Walker, 623 So.2d at 284, and Thomas, 539 So.2d at 394-96....
[[Image here]]
“ ‘The accused cannot ... prove the guilt of another by the use of hearsay statements. This hearsay ban constitutes the major barrier to exculpatory evidence, particularly in the form of a third party’s confession to the crime with which the accused is charged. Such a statement could surmount a hearsay objection if it qualifies under some hearsay exception.’
“McElroy’s Alabama Evidence, § 48.01(1). However, Gamble also notes that a situation could arise where ‘an accused’s constitutional right to present his defense would dictate admission of evidence suggesting another’s guilt.’ Id. The United States Supreme Court has encountered such a situation, where the defendant’s due-process rights conflicted with the rules of evidence. In Chambers, the Court stated: ‘In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.’ 410 U.S. at 302, 93 S.Ct. 1038.
“In addition, lower federal courts have discussed this rule of law. In Johnson, supra, the United States District Court for the Middle District of Alabama stated in dicta that the defendant could present evidence of a third-party’s culpability even if the evidence had been hearsay, because it was probative; to prevent its admission into evidence would violate the defendant’s constitutional rights. 904 F.Supp. at 1311.”
Analyzing R.J.’s statement under the three-pronged test set out in Griffin, it is clear that R.J.’s statement related to the res gestae of the burglary and excluded Acosta as the perpetrator. Additionally, had R.J. been on trial, his testimony regarding who was or was not involved in the ciime would have been admissible. During the discussions at trial as to whether R.J.’s statement should be admitted, the court acknowledged that R.J.’s statement would be by far the best evidence in support of Acosta’s defense. Although R.J.’s mother’s testimony supported her son’s statement and Acosta’s defense, her interests were not as pivotal as were R.J.’s. Moreover, the possible bias in Acosta’s brother’s testimony and his desire to free his brother were most likely evident to the jury. In its brief on appeal, the State even admits that Detective Fisher’s testimony “would have been a boon for Acosta.” (State’s brief, at 13.) Accordingly, R.J.’s statement meets the requirements discussed in Griffin.
We note that Acosta testified on his own behalf and denied involvement in the crime. Acosta also called two witnesses who testified that he was not involved in the crime: R.J.’s mother and Acosta’s younger brother. Thus, Acosta was not entirely deprived of presenting his theory of the case to the jury. However, Acosta was deprived of the ability to present a complete defense.
*651 A similar situation arose in Chambers, supra. In that case, one of Chambers’s defenses was that another man, Gable McDonald, had confessed to the crime on four separate occasions; one of which was a written confession. Chambers called McDonald as a witness when the prosecution failed to do so. McDonald’s written confession was read to the jury, but, on cross-examination by the prosecution, McDonald repudiated the confession and testified that he was promised money in exchange for giving it. Following state procedural rules, the trial court would not allow the defense to treat McDonald as a hostile witness; thus, McDonald’s testimony regarding his repudiation went unchallenged. Additionally, the trial court sustained the prosecution’s hearsay objections to testimony from three other witnesses who would have testified that McDonald independently confessed to the crime in their presence. Thus, even though Chambers was able to present some evidence that another individual had confessed to the crime for which he stood accused, the United States Supreme Court held that exclusion of the additional evidence “denied [Chambers] a trial in accord with traditional and fundamental standards of due process.” Chambers, 410 U.S. at 302. The same is true in the present case.
Notwithstanding the fact that the Alabama Rules of Evidence do not contain a hearsay exception allowing admission of an unavailable witness’s statement against his penal interest, strict application of the hearsay rule deprived Acosta of the ability to present a complete defense to the jury, i.e., to present exculpatory evidence that was probative and rehable and that was not speculative in nature. Thus, we conclude that Acosta’s due-process rights were violated by the exclusion of R.J.’s statement.
In reaching this decision, this Court does not attempt to broaden or otherwise alter its interpretation of Rule 804, Ala. R. Evid. Rather, as the United States Supreme Court concluded in Chambers, “we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived [Acosta] of a fair trial.” 410 U.S. at 303. Accordingly, Acosta is entitled to a new trial.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
KELLUM and JOINER, JJ., concur.
WINDOM, P.J., and WELCH, J„ dissent.

. Acosta called R.J. as a witness during his case-in-chief. R.J. stated his name and address but answered, “I plead the Fifth” to the remaining questions. (R. 204-06.)

. Although R.J.’s statement is not contained in the record, the discussion by the trial court, defense counsel, and prosecutor clearly indicates that R.J. admitted to the offense in his statement and affirmed that Acosta had not been involved.

. At the time Chambers was decided, there was no exception for hearsay testimony regarding an unavailable witness's statement against penal interest. 410 U.S. at 299, 93 S.Ct. 1038 (“[Exclusion would not be re *649 quired under the newly proposed Federal Rules of Evidence.").