STUART, Justice.
Devonte Cortes Acosta was convicted of first-degree burglary and was sentenced to 156 months in prison. The Court of Criminal Appeals reversed his conviction and sentence. Acosta v. State, 208 So.3d 645 (Ala.Crim.App.2015). The State petitioned for certiorari review of the Court of Criminal Appeals’ decision. We reverse and remand.
The evidence presented at trial indicates that on the day of the burglary, James W. Benford, Sr., and two of his three sons were in their house when three armed black men entered the house, demanded to know where Benford’s absent son was, and stated that they wanted their “property” back from the absent son. The men left after rummaging through the house. Ben-ford and the two sons who were present during the burglary testified that they recognized Acosta and R.J.[1] as two of three *653 armed men who had entered Benford’s house.
Detective Josh Fisher testified that, during his investigation, Benford, the two sons who were present during the burglary, and R.J. provided statements. On cross-examination, Detective Fisher testified that Benford’s trial testimony differed from his statement given during the investigation. Fisher testified that, unlike Benford’s trial testimony in which Benford identified Acosta and R.J. as two of the three men who entered his house, in the statement he gave on the day of the incident Benford stated that he could not identify any of the men who had entered his house.
In his defense, Acosta maintained that he was not involved in the burglary. In support of his defense, Acosta testified that at the time of the burglary he was with his brother and that he did not participate in the burglary. RJ.’s mother testified that Acosta was not with R.J. at the time of the burglary. She stated that Acosta and his younger brother arrived at her house shortly after R.J. had left. According to R.J.’s mother, Acosta waited at her house awhile, then left her house minutes before R.J. and “a couple of other little fellows” returned. Acosta’s brother testified that he and Acosta were together at the time of the burglary, confirmed the testimony of R.J.’s mother, and stated that he and Acosta did not burglarize Benford’s house. Acosta called R.J. as a witness, but R.J. refused to answer any questions, instead invoking his Fifth Amendment right against self-incrimination. Acosta then called Detective Fisher as a defense witness and asked him if R.J. had indicated to him whether Acosta was involved in the burglary. The State entered a hearsay objection, and Acosta argued that R.J., in light of his invocation of his Fifth Amendment rights, was unavailable but that testimony as to his statement should be admitted into evidence through Detective Fisher. After much discussion, including a statement by Acosta’s counsel that “Acosta has every right to maintain a defense,” the trial court determined that Detective Fisher’s .testimony about the contents of R.J.’s statement was hearsay and that it was not admissible under any exception to the general hearsay rule.
A jury found Acosta guilty of first-degree burglary. Acosta moved the trial court to set aside the jury’s verdict and to order a new trial. In his motion, Acosta argued that he was denied his constitutional right to present a defense when the trial court refused to admit Detective Fisher’s hearsay testimony to the effect that R.J. had told him that Acosta was not present during the burglary. After citing Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Ex parte Griffin, 790 So.2d 351 (Ala.2000), Acosta argued:
“[Acosta] contends that [R.J.’s] statement was due to be heard by the jury. They should have been given the opportunity to consider this exculpatory statement regarding [Acosta], This was an essential element of his defense — [R.J.’s] statement being admitted into evidence. The statement was to the effect that [Acosta] was not present with [R.J.] at a burglary. The statement was also given following a confession, which will likely be relied upon by the State in the subsequent prosecution. The cases cited herein reference the court’s rulings that the accused has the right to present a defense, and the inadmissibility of [R.J.’s] statement in this case, was essential to that defense. It was exculpatory, and the witness was unavailable due to his claiming his privileges extended to him by the 5th Amendment of the U.S. Constitution[;] thus, [Acosta] had no other means by which to introduce *654 this statement. Without the admission of that exculpatory statement by the unavailable [R.J.], [Acosta] was denied his right to present a defense, inherent in the United States Constitution.”
The trial court summarily denied Acosta’s motion to set aside the jury’s verdict.
Before the Court of Criminal Appeals, Acosta contended that the trial court improperly prevented him from presenting his defense that he was not present during the burglary at trial by refusing to admit into evidence Detective Fisher’s hearsay testimony concerning R.J.’s statement. After concluding that Acosta’s argument was properly preserved for appellate review, the Court of Criminal Appeals held that the trial court erred in refusing to admit into evidence Detective Fisher’s hearsay testimony regarding R.J.’s statement. That court reasoned that the trial court’s strict application of the hearsay rule deprived Acosta of the ability to present a complete defense. The State petitioned this Court for certiorari review of the decision of the Court of Criminal Appeals.
First, the State maintains that the Court of Criminal Appeals erred in holding that Acosta preserved his argument that the trial court’s strict application of the hearsay rule to exclude Detective Fisher’s hearsay testimony rendered his trial fundamentally unfair and deprived him of his constitutional right to present a defense. We agree with the State that Acosta’s general statement that he had a right to maintain a defense did not sufficiently apprise the trial court of his constitutional argument that the strict application of the hearsay rule to prohibit the admission of Detective Fisher’s testimony regarding R.J.’s statement would render his trial fundamentally unfair and deprive him of his constitutional right to present a defense. See Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994)(“The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.”).
However, upon review of the entirety of Acosta’s argument when seeking to admit Detective Fisher’s hearsay testimony and his argument in his motion for a new trial, we conclude that the Court of Criminal Appeals properly held that this issue was preserved for appellate review. “ ‘[A] motion for a new trial ... is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted.’ ” Smith v. State, 756 So.2d 892, 905 (Ala.Crim.App.1997)(quoting Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). In this case, when attempting to admit the evidence, Acosta did argue that Detective Fisher’s hearsay testimony to the effect that R.J., who had admitted to law-enforcement officers that he had participated in the burglary, had told him that Acosta was not present at the burglary was important to develop Acosta’s defense that he was not present during the burglary. Therefore, Acosta did, at the time the evidence was admitted, argue that the evidence was integral to his defense. Then, in his motion for a new trial, Acosta further developed the argument, cited case-law, and unequivocally argued that the trial court’s strict application of the hearsay rule to exclude Detective Fisher’s hearsay testimony deprived him of his defense, rendered his trial fundamentally unfair, and deprived him of due process. Cf. Chambers, 410 U.S. at 290 n. 3. Upon consideration of the entirety of the argument made by Acosta’s counsel when seeking to admit Detective Fisher’s hearsay testimony at trial and the additional devel *655 opment of the argument in Acosta’s motion for a new trial, we conclude that Acosta adequately presented to the trial court the argument he made on appeal, that he provided the trial court with an opportunity to address the alleged error, and that he properly preserved the argument for appellate review.
Next, the State maintains that, even if the issue was preserved, the Court of Criminal Appeals erred in holding that the trial court’s refusal to admit into evidence Detective Fisher’s hearsay testimony to the effect that R.J. had stated that Acosta was not present during the burglary prohibited Acosta from presenting a complete defense, rendered his trial fundamentally unfair, and deprived him of due process. According to the State, the holding of the Court of Criminal Appeals conflicts with Chambers.
In Chambers, the United States Supreme Court held that “where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” 410 U.S. at 302. In Chambers, the trial court’s application of the rules of evidence prohibited Leon Chambers, the defendant, from presenting evidence of a third party’s culpability. Chambers was charged with killing Aaron Liberty. At trial, Chambers maintained that he did not shoot Liberty. In support of his defense, Chambers presented testimony from Gable McDonald, who had given a sworn statement to Chambers’s counsel, that McDonald had shot Liberty. On cross-examination by the State, McDonald repudiated his confession and testified that he did not shoot Liberty and that he confessed to the crime in order to receive favorable treatment from law enforcement. When Chambers attempted to challenge McDonald’s renunciation of his confession by having him declared an adverse witness, the trial court, applying Mississippi’s rules of evidence, denied Chambers’s request. Additionally, the trial court, applying Mississippi’s rules of evidence, refused to admit testimony from individuals to whom McDonald had admitted that he shot Liberty. In reaching its conclusion that the trial court’s application of the rules of evidence prevented Chambers from developing his defense that another, not he, shot Liberty, the United States Supreme Court stated that the evidence the trial court refused to admit was critical to Chambers’s defense. The United States Supreme Court reasoned that because the strict application of Mississippi’s rules of evidence had prohibited the admission of critical evidence in Chambers’s defense, the trial court’s strict application of those rules to exclude the critical evidence denied Chambers a trial that complied with due process. 410 U.S. at 302, 93 S.Ct. 1038.
In Ex parte Griffin, 790 So.2d 351 (Ala.2000), this Court applied Chambers. In Ex parte Griffin, the State charged Louis Griffin with the murder of Christopher Davis after he had admitted, while pleading guilty to various offenses in federal court, that he had participated in the murder. At trial, Griffin’s defense was that he did not kill Davis and that he had lied to the federal court in his allocution to receive favorable treatment. To support this defense, Griffin attempted to present evidence indicating that two other men had been charged with killing Davis; that one of the men, Anthony Embry, had admitted under oath in court that he had killed Davis; that Embry had been convicted of Davis’s murder; that Embry had been incarcerated for the conviction; and that a state court had dismissed Embry’s conviction ex mero motu. The trial court, applying the Alabama Rules of Evidence, refused to admit the evidence of Embry’s *656 culpability. This Court, recognizing that the evidence of Embry’s confession and conviction was critical in establishing Griffin’s defense that another, not he, killed Davis, held that the trial court’s ruling excluding the evidence with regard to Em-bry’s confession and conviction prohibited Griffin from presenting his defense to the jury and violated his due-process rights under the 5th and 6th Amendments.
The holdings in both Chambers and Griffin rest upon the fact that the trial court’s strict application of the rules of evidence excluded critical evidence proffered by the defense, and the exclusion of the critical evidence resulted in the defendants’ being denied their constitutional right to a fair trial and due process. Critical evidence is defined as “[e]vidence strong enough that its presence could tilt a juror’s mind.” Black’s Law Dictionary 674 (10th ed.2014). In both Chambers and Griffin, the excluded evidence was critical to the defense because each defendant had denied participation in the offense and the excluded evidence indicated that another individual had admitted to committing the offense. When a defendant denies participation in an offense, evidence indicating that someone else has admitted to committing the offense and that that admission excludes the defendant as the offender, as it did in Chambers and Griffin, may be strong enough to influence a juror. Thus, depending on the facts of the case, the strict application of the rules of evidence to exclude critical evidence may render a trial fundamentally unfair.
Upon review of the record, we conclude that Acosta’s fundamental rights to a fair trial and to due process were not violated by the trial court’s refusal to admit into evidence Detective Fisher’s hearsay testimony because Detective Fisher’s hearsay testimony was not critical to Acosta’s defense. The testimony at trial indicated that three men were involved in the burglary of Benford’s house. Witnesses identified both Acosta and R.J. as two of the men who entered Benford’s house. Acosta, in his defense, testified that he was not present during the burglary. In addition to his testimony, Acosta presented testimony from R. J.’s mother and from his brother indicating that he was not with R.J. during the commission of the burglary. Detective Fisher’s hearsay testimony that R.J. told him that Acosta was not present during the burglary, if admitted, would have been cumulative evidence. Therefore, Detective Fisher’s hearsay testimony was not critical evidence. Unlike the evidence in Chambers and Griffin, which was the only means the defendants in those cases had of presenting their defenses, Detective Fisher’s hearsay testimony was not the only means Acosta had of presenting his defense. Because Detective Fisher’s hearsay testimony was not critical evidence for Acosta’s defense, the trial court’s exclusion of Detective Fisher’s hearsay testimony did not deny Acosta a “trial in accord with traditional and fundamental standards of due process.” Chambers, 410 U.S. at 302.

Conclusion

Based on the foregoing, the judgment of the Court of Criminal Appeals is reversed and this case is remanded to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
BOLIN, PARKER, MAIN, and WISE, JJ., concur.
SHAW, J., concurs in the result.
MOORE, C.J., and MURDOCK and BRYAN, JJ., dissent.

. Because R,J. was granted youthful-offender status, we are using initials instead of his name.