MOORE, Chief Justice
(dissenting).
I agree with the Court of Criminal Appeals that the trial court’s “strict application of the hearsay rule deprived [Devonte Cortes] Acosta of the ability to present a complete defense to the jury.” Acosta v. State, 208 So.3d 645, 651 (Ala.Crim.App.2015). “ ‘[T]he Constitution guarantees criminal defendants a “meaningful opportunity to present a complete defense.’”” Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)); see also McWhorter v. State, 142 So.3d 1195, 1255-56 (Ala.Crim.App.2011) (recognizing a criminal defendant’s right to present a complete defense). In this case, I believe that, under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Ex parte Griffin, 790 So.2d 351 (Ala.2000), the trial court applied the hearsay rule “‘mechanistically to defeat the ends of justice.’” Griffin, 790 So.2d at 354 (quoting Chambers, 410 U.S. at 302. I therefore respectfully dissent.
In Chambers, Leon Chambers was accused of murdering a police officer named Aaron Liberty. However, another person, Gable McDonald, provided a sworn statement confessing to the crime for which Chambers had been charged. McDonald also made three other statements declaring that he shot Liberty. One month later, McDonald changed his story and repudiated his prior sworn confession. The case against Chambers went to trial. Chambers wanted to admit McDonald’s confession, but the trial court would not allow it because it was hearsay. When the State refused to call McDonald as a witness, Chambers called him and asked the court for permission to treat him as a hostile witness. The trial court denied Chambers’s request under a Mississippi rule of evidence forbidding a party from cross-examining his own witness.
Chambers was convicted, and his case eventually went to the United States Supreme Court, which held:
“Few rights are more fundamental than that of an accused to present witnesses in his own defense. E.g., Webb v. Texas, 409 U.S. 95 (1972); Washington v. Texas, 388 U.S. 14, 19 (1967); In re Oliver, 333 U.S. 257 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers’ defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.
“We conclude that the exclusion of this critical evidence, coupled with the State’s refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no *658 new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.”
Chambers, 410 U.S. at 302-03 (emphasis added).
Similarly, in Griffin, Louis Griffin was convicted of murdering Christopher Davis. Another man, Anthony Embry, had pleaded guilty to Davis’s murder. However, almost four years later, Griffin stated in an allocution that he had participated in Davis’s murder. As a result, the State exonerated Embry and charged Griffin with Davis’s murder. At trial, Griffin claimed that he lied in his allocution so that he would receive favorable treatment. Griffin also sought to introduce Embry’s guilty plea into evidence, but the trial court refused.
Griffin’s case ultimately reached this Court, which determined that the trial court violated Griffin’s constitutional right to present a defense. Griffin, 790 So.2d at 353. The Court noted that Alabama had long recognized a defendant’s right to prove that somebody else committed the crime, but it held that the evidence must be probative, not speculative. To that end, the Court developed the following three-element test to determine whether such evidence was admissible: “(1) the evidence ‘must relate to the “res gestae” of the crime’; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence ‘would have to be admissible if the third party was on trial.’ ” Griffin, 790 So.2d at 354.
As to the claim that Embry’s guilty plea was hearsay, this Court cited Chambers for the proposition that, “‘[i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.’ ” Griffin, 790 So.2d at 354 (quoting Chambers, 410 U.S. at 302. This Court then held:
“We are faced with the same general situation here [as was the Supreme Court in Chambers ]. Without Embry’s plea, Griffin will not be able to place his defense before a jury; to bar him from placing his defense before the jury would violate his due-process rights under the 5th and 6th Amendments. Furthermore, as we have noted above, this alternative theory of the crime that Griffin sought to present is not speculative, but probative, and Embry’s plea, along with the evidence of the arrests and the exoneration, is some of the strongest evidence Griffin could present to the jury to prove that someone else committed the crime. Rather than violate Griffin’s right to due process, we follow the United States Supreme Court’s holding in Chambers and hold that Griffin’s constitutional rights supersede the hearsay rule in the Alabama Rules of Evidence. However, in doing so, we note that not in every case will the defendant’s right to present his defense supersede the hearsay rule; it will supersede that rule only in those cases that, as indicated by the first two elements of the test stated above, have a probative alternative theory of culpability and not an alternative theory that is merely speculative and meant only to confuse the jury.”
Griffin, 790 So.2d at 355.
Like the defendants in Chambers and Griffin, Acosta attempted to present evidence indicating that R.J. committed the crime instead of him. Also like Chambers and Griffin, this case involves “ ‘constitu *659 tional rights directly affecting the ascertainment of guilt,’ ” which means that “‘the hearsay rule may not be applied mechanistically to defeat the ends of justice.’” Griffin, 790 So.2d at 354 (quoting Chambers, 410 U.S. at 302. R.J.’s statement would have been admissible under Griffin’s three-element test and would have been “some of the strongest evidence [Acosta] could present to the jury to prove that someone else committed the crime.” Griffin, 790 So.2d at 355. Moreover, if R.J.’s statement were admitted, the State still would have had the right to cross-examine Detective Fisher regarding RJ.’s statement, which would have allowed the jury to determine whether the evidence was credible. Thus, under those circumstances, I believe that R.J.’s statement should have been admitted in order to guarantee Acosta’s right to present a “complete defense.” Holmes, 547 U.S. at 324.
The main opinion reads Chambers and Griffin more narrowly, reasoning that their holdings “rest upon the fact that the trial court’s strict application of the rules of evidence excluded critical evidence....” 208 So.3d at 656 (emphasis added). The main opinion then provides a definition of what constitutes “critical” evidence and concludes that the evidence in this case was not “critical.” See 208 So.3d at 655. However, even though Chambers described the evidence in that case as “critical,” the rule enunciated in Chambers was not limited solely to “critical” evidence. As the Supreme Court enunciated in Chambers: “In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” 410 U.S. at 302. This is the rule from Chambers that was followed in Griffin, which likewise did not limit Chambers’s application to “critical” evidence. See Griffin, 790 So.2d at 354-55. I therefore believe that the main opinion construes Chambers and Griffin too narrowly.
Moreover, even if Chambers and Griffin apply only to “critical” evidence, I believe that R.J.’s statement would qualify as “critical” evidence in this case. The main opinion defines “critical evidence” as “ ‘[e]vidence strong enough that its presence could tilt a juror’s mind.’ ” 208 So.3d at 656 (quoting Black’s Law Dictionary 674 (10th ed.2014)). The main opinion concludes that Detective Fisher’s testimony regarding RJ.’s statement was not critical because it was cumulative. However, as Griffin noted, an admission from an assailant “is some of the strongest evidence [a defendant] could present to the jury to prove that someone else committed the crime.” Griffin, 790 So.2d at 355. The jury already had conflicting testimony in this case, but a statement from R.J. that he committed the crime and that Acosta was not with him when he committed it might have created the reasonable doubt necessary to acquit Acosta. I therefore cannot agree that Detective Fisher’s testimony regarding R.J.’s statement was not critical evidence.
For these reasons, I respectfully dissent.