Louis Griffin was convicted of capital murder for the death of Christopher Davis and was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. Griffin v.State, [Ms. CR-97-1026, December 10, 1999] 790 So.2d 267
(Ala.Crim.App. 1999). We granted certiorari review, and we now reverse and remand.
Christopher Davis was killed on September 24, 1992. Two men were arrested in regard to the killing, Anthony Embry and Falanda Miles. Both were indicted for murder, based on eyewitness testimony and other evidence. Embry pleaded guilty to the charge of murder and was sentenced to 20 years' imprisonment.[1]
Miles was tried and was acquitted by a jury.
The Davis murder case was closed until April 1996, when Griffin pleaded guilty to violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), in the United States District Court for the Southern District of New York. Griffin was the "security man" for the 142d Street Lynch Mob Crew ("the Crew") in New York City. The Crew supplies illegal drugs to sellers in various parts of the country, including Alabama. Griffin's RICO charge arose out of his involvement in this operation. In his plea, Griffin entered an allocution in which he stated that he had participated in the death of Davis in September 1992.[2] As a *Page 353 
result of this testimony, authorities in Alabama exonerated Embry for the murder of Davis and initiated proceedings against Griffin.
At trial, Griffin claimed that he had lied to the federal court in order to receive favorable treatment, but that in reality he had not killed Davis. In order to support this contention, he attempted to present evidence indicating that the State had initially believed someone else committed the crime. Specifically, he sought to introduce evidence indicating: (1) that after the initial police investigation into Davis's death, the State charged Miles and Embry with the offense; (2) that Embry admitted to the murder while under oath in an Alabama court, by pleading guilty; (3) that Embry was convicted of the offense pursuant to a plea agreement, and served four years in Alabama prisons for Davis's death before the State decided to prosecute Griffin; and (4) that a state court ex mero motu dismissed the valid plea of Embry. After an in limine hearing, the trial court excluded this evidence as inadmissible. Griffin contends that by preventing him from presenting this evidence, the trial court violated the defendant's right to present a defense, a right guaranteed by the 4th, 5th, 6th, 8th, and 14th Amendments to the United States Constitution and by the equivalent portions of the Alabama Constitution and by Alabama law. We agree.
The United States Supreme Court has held that a defendant has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See Chambersv. Mississippi, 410 U.S. 284 (1973); Washington v. Texas,388 U.S. 14 (1967). However, this right is not absolute; instead, the trial court will have to consider the admissibility of such evidence in conjunction with other legitimate interests involved in the trial process.Chambers, 410 U.S. at 295; see also Guam v. Ignacio,10 F.3d 608 (9th Cir. 1993). As a result, the trial court is presented with a balancing test in order to determine whether the evidence of a third party's culpability is properly admissible:
 "The court must weigh the defendant's `strong interest in presenting exculpatory evidence' against the state's interest `in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party.'"
United States v. Johnson, 904 F. Supp. 1303, 1311 (M.D.Ala. 1995) (citations omitted). In weighing those interests, the federal courts have required the defendant to show that the evidence he is offering is probative and not merely speculation that would confuse the jury:
 "To satisfy this balancing test, there must be `some showing of a nexus between the other party and the particular crime with which a defendant is charged.' Of course, this nexus must be substantial — that is, probative — and not tenuous or merely speculative."
Id. (citations omitted).
Like the federal courts, Alabama courts have long recognized the right of a *Page 354 
defendant to prove his innocence by presenting evidence that another person actually committed the crime. See Ex parte Walker, 623 So.2d 281
(Ala. 1992); Thomas v. State, 539 So.2d 375 (Ala.Crim.App. 1988);Green v. State, 258 Ala. 471, 64 So.2d 84
(1953); Underwood v. State, 239 Ala. 29, 193 So. 155
(1939); Orr v. State, 225 Ala. 642, 144 So. 867 (1932); Houston v.State, 208 Ala. 660, 95 So. 145 (1923); Tennison v. State,183 Ala. 1, 62 So.2d 780 (1913); McGehee v. State, 171 Ala. 19,55 So. 159 (1911); McDonald v. State, 165 Ala. 85, 51 So. 629 (1910). In addition, Alabama courts have also recognized the danger in confusing the jury with mere speculation concerning the guilt of a third party:
 "It generally is agreed that the defense, in disproving the accused's own guilt, may prove that another person committed the crime for which the accused is being prosecuted. . . . The problem which arises in the application of this general rule, however, is the degree of strength that must be possessed by the exculpatory evidence to render it admissible. The task of determining the weight that must be possessed by such evidence of another's guilt is a difficult one."
Charles W. Gamble, McElroy's Alabama Evidence § 48.01(1) (5th ed. 1996). To remove this difficulty, this Court has set out a test intended to ensure that any evidence offered for this purpose is admissible only when it is probative and not merely speculative. Three elements must exist before this evidence can be ruled admissible: (1) the evidence "must relate to the `res gestae' of the crime"; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence "would have to be admissible if the third party was on trial." See Ex parte Walker, 623 So.2d at 284, and Thomas, 539 So.2d at 394-96.
We find these elements present in Griffin's case. The evidence Griffin offered certainly relates to the res gestae of the offense. Likewise, if believed by a jury, that evidence would also exclude Griffin as Davis's killer. Finally, the evidence would be admissible if Embry and Miles were on trial. Therefore, any documents that pertain to this probative theory should be admissible.
The State makes an additional argument as to Embry's guilty plea. It apparently argues in its brief that, even if the evidence of the plea passes the three-pronged test, at Griffin's trial Embry's plea is still hearsay that does not fall within any exception. Professor Gamble has stated:
 "The accused cannot . . . prove the guilt of another by the use of hearsay statements. This hearsay ban constitutes the major barrier to exculpatory evidence, particularly in the form of a third party's confession to the crime with which the accused is charged. Such a statement could surmount a hearsay objection if it qualifies under some hearsay exception."
McElroy's Alabama Evidence, § 48.01(1). However, Gamble also notes that a situation could arise where "an accused's constitutional right to present his defense would dictate admission of evidence suggesting another's guilt." Id. The United States Supreme Court has encountered such a situation, where the defendant's due-process rights conflicted with the rules of evidence. In Chambers, the Court stated: "In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."410 U.S. at 302.
In addition, lower federal courts have discussed this rule of law. In Johnson, *Page 355 
supra, the United States District Court for the Middle District of Alabama stated in dicta that the defendant could present evidence of a third-party's culpability even if the evidence had been hearsay, because it was probative; to prevent its admission into evidence would violate the defendant's constitutional rights. 904 F. Supp. at 1311.
We are faced with the same general situation here. Without Embry's plea, Griffin will not be able to place his defense before a jury; to bar him from placing his defense before the jury would violate his due-process rights under the 5th and 6th Amendments. Furthermore, as we have noted above, this alternative theory of the crime that Griffin sought to present is not speculative, but probative, and Embry's plea, along with the evidence of the arrests and the exoneration, is some of the strongest evidence Griffin could present to the jury to prove that someone else committed the crime. Rather than violate Griffin's right to due process, we follow the United States Supreme Court's holding inChambers and hold that Griffin's constitutional rights supersede the hearsay rule in the Alabama Rules of Evidence. However, in doing so, we note that not in every case will the defendant's right to present his defense supersede the hearsay rule; it will supersede that rule only in those cases that, as indicated by the first two elements of the test stated above, have a probative
alternative theory of culpability and not an alternative theory that is merely speculative and meant only to confuse the jury.
Therefore, we reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox*, Lyons, and England, JJ., concur.
Johnstone, J., concurs specially.
Cook, See, and Brown, JJ., dissent.
* Although Justice Maddox did not sit for oral argument in this case, he has listened to the tapes.
[1] Justice See states in his dissenting opinion:
 "Griffin sought to introduce a copy of the order of the Jefferson County Circuit Court accepting Anthony Embry's plea of guilt to a charge of murder and sentencing him to imprisonment for 20 years and 30 days. The trial court properly excluded this document. The document does not state that Embry pleaded guilty to the murder of Davis; it does not mention the victim's name at all. . . . Accordingly, we cannot determine whether that document would have been probative of Embry's guilt and Griffin's innocence."
790 So.2d at 358.
Neither the State nor the Court of Criminal Appeals has suggested that Embry did not plead guilty to murdering Christopher Davis. In fact, the Court of Criminal Appeals states in its opinion that Embry did so. Furthermore, the record before us contains a copy of the indictment alleging that Embry had "intentionally cause[d] the death of another person Christopher Lynn Davis, by shooting him with a pistol;" a copy of an arrest warrant alleging the same; and a "Motion To Set Aside Plea," filed by the State and requesting that the judgment entered on Embry's guilty plea be set aside. That motion stated: "On or about May 4, 1993, Defendant [Anthony Embry] pleaded guilty to the murder of Christopher Lynn Davis." There is no question, based on the record before us, that Embry was indicted for, and pleaded guilty to, the murder of Christopher Davis.
[2] Griffin's pertinent testimony at the allocution was as follows:
 "Q. Directing your attention to September 24, 1992, did you agree to participate in the murder of someone in Alabama?
"A. Yes.
 "Q. Did you come to learn that that person's name was Christopher Lynn Davis?
"A. Yes.
". . . .
 "Q. Did you in fact participate in the murder of Christopher Lynn Davis?
"A. Yes.
"Q. And was that in Alabama?
"A. Yes."