MURDOCK, Justice
(dissenting).
I respectfully dissent. Of particular concern, in my view, is the issue whether the United States Supreme Court’s decision in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), is apposite to a case such as this (as presumed by the parties and the main opinion) where the potential exculpation of the defendant is not a function of a hearsay declarant’s inculpation of himself.
Whether Chambers and Similar Cases are Apposite
It might be argued that the holding in Chambers v. Mississippi was limited to *660 the unusual facts of that case. Chambers involved an arguably antiquated evidentia-ry “voucher” rule that prohibited the defendant, Chambers, from impeaching through “cross-examination” the trial testimony of his own witness, McDonald. At trial, McDonald had repudiated his earlier out-of-court statement that he, rather than Chambers, had committed the criminal act at issue. This bar to the cross-examination of McDonald as a hostile witness, when combined with the exclusion on hearsay grounds of testimony from several other prospective witnesses as to similar out-of-court statements by McDonald, was held by the Supreme Court to violate Chambers’s due-process right to present his defense. The Chambers Court appeared to emphasize that its holding was limited to the unique facts of that case, however:
“We conclude that the exclusion of this critical evidence [from other witnesses based on hearsay grounds], coupled with the State’s refusal to permit Chambers to cross-examine McDonald [because of the ‘voucher rule’], denied [Chambers] a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.”
Chambers, 410 U.S. at 302-03 (emphasis added).
Consistent with this declaration, the State of Alabama argues here that Chambers should in fact be limited to the facts of that case. There is much from a policy standpoint — particularly with respect to the integrity of rules of evidence designed to promote reliable outcomes — to commend the State’s argument. And without question this is a confusing area of the law. The United States Supreme Court itself has evidenced it own uncertainty as to the reach and meaning of Chambers. In Montana v. Egelhoff, 518 U.S. 37, 53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the Supreme Court cautioned against reading Chambers too broadly, stating:
“Thus, the holding of Chambers — if one can be discerned from such a fact-intensive case — is certainly not that a defendant is denied ‘a fair opportunity to defend against the State’s accusations’ whenever ‘critical evidence’ favorable to him is excluded, but rather that erroneous evidentiary rulings[2] can, in combination, rise to the level of a due process violation.”
(Emphasis added.)
The problem for the State in this regard is that Chambers has been followed in decisions such as Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), and this Court’s decision in Ex parte Griffin, 790 So.2d 351 (Ala.2000), which do not involve the same facts as did Chambers. The State obviously cannot ask us to overrule Green, and it does not seek to distinguish that case from the present one. Nor does it ask us to overrule Griffin or seek to distinguish it on a viable ground.
In Green, the United States Supreme Court invoked Chambers in holding that due process was violated during the penal *661 ty phase of a capital trial by the exclusion of a statement by third party that he had killed the victim. The statement inculpated the third party as the killer and thereby exculpated the defendant.
In Griffin, this Court invoked Chambers and held that due process was violated when otherwise applicable rules of evidence prevented-Griffin from introducing evidence that a third party had pleaded guilty to, and had even been convicted of, the murder with which Griffin was charged (although a state trial court subsequently dismissed the third party’s guilty-plea conviction after the State decided to prosecute Griffin for the murder). This Court noted that, as a general rule, Alabama courts had, long before Chambers, recognized “the right of a defendant to prove his innocence by presenting evidence that another person actually committed the crime,” 790 So.2d at 353-54, with the caveat that evidence that another person committed the crime “is admissible only when it is probative and not merely speculative.” Griffin, 790 So.2d at 354 (emphasis added). We further noted:
“Three elements must exist before this evidence can be ruled admissible: (1) the evidence ‘must relate to the “res gestae” of the crime’; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence “would have to be admissible if the third party was on trial.’ See Ex parte Walker, 623 So.2d [281] at 284 [(Ala.1992)].”

Id.

Taking into consideration the circumstances presented in Chambers, Green, Griffin, and other federal cases that have invoked Chambers, a sound argument can be made that, if Chambers is not to be viewed as sui generis, it is at least properly viewed as limited to those cases where a defendant seeks to defend against a criminal prosecution by offering proof that some particular third party committed the specific criminal act of which .he is accused. That is not the situation presented in the case now before this Court.
In West v. Bell, 550 F.3d 542 (6th Cir. 2008), the United States Court of Appeals for the Sixth Circuit explained that, in Chambers, there was only one perpetrator and, thus, the inculpation of another particular person logically served to exculpate the defendant. 550 F.3d at 558. In contrast, in West, the evidence indicated that there were two perpetrators. Thus, the evidence implicating another particular party did not necessarily exculpate West. As a result, the Sixth Circuit distinguished Chambers from the case before it and found that the decision of the Tennessee Supreme Court was not contrary to Chambers. 550 F.3d at 558. See generally Smith v. Gordy (No. 7:14-CV-1420-AKK-TMP) (N.D.Ala. Sept. 4, 2015) (not reported in F.Supp.3d) (denying federal habeas corpus petition after state conviction for trafficking in marijuana and finding no error in excluding evidence of a guilty plea by another person to possession of the same marijuana at issue in Smith’s case; Smith was unable to meet the second prong of the Griffin test because drugs can be possessed jointly and the third party’s guilty plea did not exclude Smith’s participation in the crime).
In United States v. Thomas, 62 F.3d 1332 (11th Cir.1995), the United States Court of Appeals for the Eleventh Circuit aptly observed:
“The second issue relating to the exclusion of the McCoys’ out-of-court statements is whether, even though the statements were outside the ambit of Rule 804(b)(3), [Fed.R.Evid.,] the exclusion of them from evidence denied the Thomases their right to a fair trial. The Thomases contend that without the McCoys’ statements, they could not put *662 forth their defense that they lacked the requisite intent to defraud. The Thom-ases cite three cases for support: Green v. Georgia, 442 U.S. 95, 97 (1979); Chambers v. Mississippi 410 U.S. 284, 302 (1973); and United States v. Benveniste, 564 F.2d 335, 337 (9th Cir.1977). In all three, the defendant’s constitutional rights were violated by the trial court’s decision to exclude ‘testimony from a witness concerning statements made by another person to that witness which tended to incriminate the other person and exculpate the defendant.’ Benveniste, 564 F.2d at 342. See also Green, 442 U.S. at 96.”
62 F.3d at 1338 (emphasis added).
In other words, Chambers has been understood to be apposite in cases involving of out-of-court declarations that inculpate the declarant in such a way that necessarily exculpates the defendant. See also, e.g., Thomas v. State, 539 So.2d 375, 396 (Ala.Crim.App.), aff'd, 539 So.2d 399 (Ala.1988) (“The most important distinction between this case and Chambers is the effect of the excluded evidence on the guilt or innocence of the person on trial. In Chambers, the hearsay statements which pointed to the guilt of McDonald also pointed to the innocence of Chambers.”).
As this Court explained in Griffin:
“The United States Supreme Court has held that a defendant has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See Chambers v. Mississippi, 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973); Washington v. Texas, 388 U.S. 14 [87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967).”
Griffin, 790 So.2d at 353.
Thus, Chambers arguably represents a narrowly carved niche of cases in which a defendant seeks to prove his or her own innocence as to a certain criminal act by introducing evidence of another particular person’s commission of that same act. To expand the Chambers holding beyond this category of cases holds the potential to threaten a wide array of carefully framed evidentiary rules designed to limit the presentation of evidence at trial to evidence with a sufficient likelihood of reliability.
Here, RJ.’s out-of-court statement that Acosta simply was not present during the crime was not testimony that some particular person other than Acosta actually filled the role of the third participant in the crime. Unlike Chambers, there were multiple participants in the crime here. Therefore, insofar as R.J.’s out-of-court statement served to inculpate R.J., it did not in that aspect logically exculpate Acosta. And, for that matter, R.J.’s out-of-court declaration did not identify any particular third person as filling the role in the crime that Acosta was accused of filling. Thus, for this case to be decided on R.J.’s testimony that Acosta was not present during the burglary would make use of the very type of “speculative” evidence as to who actually did commit the acts in question disavowed in Griffin. (And, even if R.J.’s statement had identified a particular person as the third participant in the crime, I see no basis for concluding that such a declaration would be admissible in the trial of that third person as would be required under the third prong of Alabama’s general rule for the admission of such evidence as described in Griffin.)
In short, I question the premise of the main opinion, i.e., that Chambers is appo *663 site to a case of this nature and might require the reversal of the defendant’s conviction in this case if only the facts (the other evidence offered by Acosta) had been a little different (less) so as to make Acosta’s defense more dependent upon the hearsay testimony in question. By positing our willingness to consider the Chambers holding in cases that do not fall within the narrow line of cases contemplated by Chambers and its progeny and this Court’s own holding in Griffin, I fear we risk undermining important evidentiary rules designed to assure the reliability of evidence and setting the stage for improper reversals of criminal convictions in a broader array of cases than the Chambers holding contemplated.

The State’s “Other-Evidence” Argument

Unfortunately for the State, however, it does not argue that the hearsay testimony at issue in this case fails to qualify for favorable treatment under Chambers (and its progeny) and Griffin on the ground that this testimony is not actually testimony that inculpates a particular third person and thereby logically exculpates Acosta. The State ignores the failure of the evidence in this regard and, instead, argues simply that the hearsay evidence at issue here is not “critical evidence” for Acosta’s defense. Specifically, the State pins its hope for a reversal on an argument that the hearsay evidence at issue is not “critical” to Acosta because, the State says, it is “cumulative” of “other evidence” upon which Acosta could and did rely. Therefore, I will proceed, like the parties and the main opinion, to assume that Chambers is apposite and consider this “other-evidence” argument of the State within that assumed context.
The main opinion agrees with the State’s argument that the testimony of the investigating police officer — that R.J. told him that R.J. participated in the crime but that Acosta did not — is not “critical evidence” because there is “other evidence” Acosta can use in an attempt to prove his defense that he was not present. Because I do not find support in Chambers and its progeny for this “other-evidence” rationale, I respectfully disagree with the conclusion reached by the main opinion that Acosta is not entitled to relief under those cases, including Griffin.
In Chambers, the United States Supreme Court noted that due process includes “the right to a fair opportunity to defend against the State’s accusations,” 410 U.S. at 294, and specifically the right “of an accused to present witnesses in his own defense.” 410 U.S. at 302. Chambers held that where testimony is critical to a defense, and “where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” Id. at 302.
The main opinion appears to acknowledge these principles but concludes that there was no violation of due process here because, it concludes, R.J.’s statement exonerating Acosta was not “critical” evidence. The main opinion defines “[cjritical evidence ... as ‘[ejvidence strong enough that its presence could tilt a juror’s mind.’ Black’s Law Dictionary 674 (10th ed.2014).” 208 So.3d at 666. Notwithstanding its invocation of this definition, the main opinion concludes that testimony about R.J.’s statement was not critical evidence because “Detective Fisher’s hearsay testimony was not the only means Acosta had of presenting his defense.” 208 So.3d at 656.
I cannot agree that the evidence is not “critical” merely because there is “other evidence” to support the defense. First, in Chambers, the excluded evidence was held to be critical even though there was other *664 evidence to support the defense. Chambers sought to prove that another person, McDonald, fired the shots that killed a police officer. The defense called McDonald as a witness and introduced a written confession from McDonald; on cross-examination, McDonald renounced his written confession. The defense was not allowed to cross-examine McDonald (under a rule that a party cannot impeach its own witness) and was not allowed to introduce testimony from three of McDonald’s friends that McDonald had admitted to them that he shot the police officer. The Supreme Court held that Chambers was denied due process by the ruling that prevented his cross-examination of McDonald. Significantly, the excluded examination was not the only available evidence to support the defense: there was testimony from an eyewitness who testified that McDonald was the shooter, as well as McDonald’s own written confession. The Supreme Court noted that
“all that remained from McDonald’s own testimony was a single written confession countered by an arguably acceptable renunciation. Chambers’ defense was far less persuasive than it might have been had he been given an opportunity to subject McDonald’s statements to cross-examination or had the other confessions been admitted.”
Chambers, 410 U.S. at 294.
In Griffin, the decision did not turn on the presence or absence of other evidence. It is noteworthy, however, that this Court observed, not that the evidence at issue was the only evidence, but that it was “some of the strongest evidence Griffin could present to the jury to prove that someone else [had] committed the crime.” Griffin, 790 So.2d at 355 (emphasis added).
The “other evidence” indicating that Acosta was not present during the crime does not eliminate the need for evidence of R.J.’s statement. The other evidence identified by the main opinion is (1) Acosta’s own testimony, (2) testimony from Acosta’s brother, and (3) testimony from R.J.’s mother that Acosta was at her house during the relevant period.
The testimony from Acosta and his brother is not an adequate substitute for R.J.’s statement. Their testimony easily could have been discounted by the jury as biased. The testimony from R.J.’s mother is also an inadequate substitute for at least two reasons.
First, because the mother was not at the scene of the crime, the jury was aware that, unlike R.J., she could not testify directly as to who did or did not commit the crime. Second, the mother’s testimony is to some degree inconsistent, as to the relevant times, with a written statement given by Acosta to the police the day after the crime, This inconsistency, combined with the vagaries of memory and inherent ambiguity of some of the language in the mother’s testimony, left room for the jury to discount that testimony.
In light of the foregoing, it seems that the testimony of Acosta’s other witnesses — which, lest we forget, was directly contradicted by the victims’ testimony— would have been greatly strengthened had it been corroborated by testimony from a police officer regarding the statement of a participant in the crime. In point of fact, the State actually concedes in its brief to the Court of Criminal Appeals that evidence as to R.J.’s statement “would have been a boon for Acosta.” Nonetheless, the State then argues that the evidence was not critical because there was other, albeit weaker, evidence on the same point.
Aside from the aforesaid particulars of this case, I have more general concerns regarding the workability and propriety of an “other-evidence” test. First, how much *665 is enough? How much “other evidence” is needed to warrant the exclusion of evidence that could make a the difference in the jury’s perceptions? Should this sufficiency determination be left to the jury? I see no standard to guide trial and appellate court judges in this endeavor. What might be deemed by one judge to be “enough” “other evidence” of a fact to warrant a ruling barring a defendant from introducing any more evidence of that fact might be quite different from what might be deemed to be “enough” “other evidence” by another judge.
Moreover, the “other-evidence” approach seems even more problematic when one considers that it would require us to allow one defendant to introduce certain evidence because he or she has no other corroborating evidence, while denying that right to a defendant who can in fact gather corroborating evidence of the same fact. Does this make sense? In relation to evidence that could make the difference in the outcome of a criminal trial, why would we put the defendant who can gather corroborating evidence of the exculpating fact in a worse position in relation to proving that fact than a defendant who is without any such corroborating evidence?
In fact, the approach of allowing otherwise inadmissible evidence if it is the only evidence supportive of an exculpating fact while excluding it when other evidence is available that tends to prove the same fact actually inverts the role of corroborative evidence set out in Chambers. In Thomas v. State, supra, the Court of Criminal Appeals explained Chambers as follows:
“In determining that the hearsay statements of McDonald’s three friends should have been allowed in evidence, the Supreme Court decided that the hearsay statements ‘were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability.’ Chambers, [410 U.S. at 300,] 93 S.Ct. at 1048.
“The reasons for this determination were that ‘each of McDonald’s confessions was made spontaneously to a close acquaintance shortly after the murder had occurred,’ ‘each one was corroborated by some other evidence in the case,’ ‘the sheer number of independent confessions provided corroboration for each’ and ‘each confession ... was in a very real sense self-incriminatory and unquestionably against interest.’ Chambers, [410 U.S. at 300-01,] 93 S.Ct. at 1048.”
539 So.2d at 396 (emphasis added). The Thomas court then went on to hold that the evidence proffered in the case before it had been properly excluded by the trial court because it lacked sufficient “assurances of reliability,” a finding reached largely based on the fact that the evidence was a “lone hearsay statement [that] was not corroborated by any other evidence”:
“In the case at bar, we do not find any of the assurances of reliability that were present in Chambers. At the guilt phase of the trial, the lone hearsay statement was not corroborated by any other evidence and it was not ‘unquestionably1 against Billy’s interest. Billy’s statement was made to his and the appellant’s mother. Moreover, Billy did not testify at this trial and thus could not be cross-examined by the State.”
539 So.2d at 396 (emphasis added).
In Green, supra, the United States Supreme Court found it important that the there were “substantial reasons ... to assume [the] reliability” of the evidence at issue, including the fact there was other evidence corroborating the excluded testimony that itself was “ample”:
“Regardless of whether the proffered testimony comes within Georgia’s hear *666 say rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, see Lockett v. Ohio, 438 U.S. 586, 604-605 (1978) (plurality opinion); id. at 613-616 (opinion of Blackmun, J.), and substantial reasons existed to assume its reliability. Moore made his statement spontaneously to a close friend. The evidence corroborating the confession was ample, and indeed sufficient to procure a conviction of Moore and a capital sentence. The statement was against interest, and there was no reason to believe that Moore had any ulterior motive in making it.”
Green, 442 U.S. at 97.
In this case, unlike in Thomas where exclusion of the evidence was upheld on appeal, but like in Chambers and Green where the exclusion of the evidence was overturned on appeal, the hearsay statement has “assurances of reliability” because there is in fact corroborating “other evidence.” The hearsay statement at issue here is one that was given to an investigating police officer, who would be the witness to testify at trial as to that statement and who would be subject to cross-examination by the State as to the circumstances under which the statement was made and the reliability of his memory or record of it. Although the declarant himself would not be available for cross-examination because of his invocation of the Fifth Amendment, as was the case in Chambers and Grijfin his statement was against his own interest in that it involved an admission that he was a participant in the crime; Moreover, as in Chambers and Griffin, the fact that RJ.’s “hearsay statement was ... corroborated by ... other evidence” (in this case, the testimony of Acosta and two other witnesses) provides further “assurance of reliability” that supports the admission of the statement, not its exclusion.
In sum, I cannot conclude that evidence is not critical merely because there is “other evidence” on the same point. As to this particular case, I do not see how evidence the State concedes would be “a boon for [the defendant]” in a criminal case could not be considered “critical evidence.”
BRYAN, J., concurs.

. The Egelhoff Court's baffling reference to "erroneous evidentiary rulings” in Chambers is itself at odds with the factual premise of Chambers and is perhaps a further reflection of the confusion and uncertainty engendered by Chambers.